UNITED STATES of America,
Appellee,

v.

Christopher HUGHES, Appellant.

No. 270, Docket 31791.

United States Court of Appeals
Second Circuit.

Argued Jan. 16, 1968.

Decided Feb. 15, 1968.

Richard Owen, New York City, for appellant.

James D. Zirin, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, Pierre N. Leval, Asst. U. S. Atty., on the brief), for appellee.

Before LUMBARD, Chief Judge, and WATERMAN and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Appellant Christopher Hughes appeals his conviction for conspiring to use the facilities of interstate commerce to promote the unlawful activity of extortion in violation of the laws of North Carolina, 18 U.S.C. §§ 371, 1952. Appellant was tried in the United States District Court for the Southern District of New York before Irving Ben Cooper, J., and a jury. Because of errors in the trial, we are compelled to reverse and remand for a new trial.

The facts need not be recounted in detail. Appellant Hughes does not claim that the evidence was insufficient, and

this restraint is well-warranted. Accepting the evidence in a light most favorable to the Government, as we must after the jury verdict, Hughes took part in a scheme to extort money from apparent homosexuals, which operated as follows: One of the conspirators would place the victim in a compromising sexual situation and then steal his wallet. At some later date, other members of the ring would pose as police officers and confront the victim with forged criminal charges alleging unlawful homosexual conduct. If he paid, the "officers" would have the "charges" dropped. The Government presented testimony that, in accordance with this scheme, Hughes obtained a wallet in November 1965, from a resident of North Carolina, a married man and father of four children. The latter was in New York to attend a professional meeting; he met Hughes in a bar and invited him to his hotel room for a drink. Once inside, Hughes became violent, demanded the victim's money, and took his wallet and $90 from a suitcase. Hughes then gave the wallet to co-defendant Thomas Rochford[1] so that Rochford and two other conspirators could visit the victim in North Carolina on a mission of extortion. In January 1966, the initial attempt was made, first at his home, then at his office, but he was out of town. Some time later, two of the conspirators made another try, but their quarry was again away.

Hughes took the stand and denied any connection with a conspiracy to extort money from this victim. He admitted being in the hotel room with him, but offered different reasons for acquiring and disposing of the wallet. By its verdict, the jury rejected this version of the events.

On appeal, the attack is upon the prosecutor's summation and the judge's charge. Appellant claims that the former was so inflammatory and prejudicial as to require reversal. The principal complaint is that the prosecutor stated:

> I said Mr. Hughes is doubly vicious because not only was he a part, and an important part of this, because his participation was needed for this play with * * * [the victim][2] and other plays like it that Mr. Rochford later on testified about, but he is doubly vicious because he demanded his full constitutional rights here knowing full well he was guilty. He demanded that we parade * * * [the victim] in here with all the embarrassment that would entail for * * * [him] for the rest of his life, perhaps.

While the prosecutor's[3] indignation was understandable, it was clearly improper to state that Hughes was "doubly vicious because he demanded his full constitutional rights * * * *." We cannot permit an argument that claiming any constitutional right is "vicious"; it is simply not an appropriate consideration for the jury, and yet—once called to their attention—could have great force. Moreover, allowing such comment on the exercise of a constitutional right tends to destroy it by "making its assertion costly." Griffin v. State of California, 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed. 2d 106 (1965). Defendants will be more likely to plead guilty, perhaps on a lesser charge, than risk demanding their right to a trial if this demand is to be counted against them in the minds of the jury. Defense counsel made a timely motion for a mistrial, but the judge denied it and made no corrective instruction to the jury. Cf. United States v. Murphy, 374 F.2d 651 (2d Cir.), cert. denied, 389 U.S.

1. Rochford, a key government witness and co-defendant in the indictment, pleaded guilty before the trial. The indictment named as co-conspirators, but not defendants, Sherman Kaminsky and Elwood Hammock; the latter also testified for the Government.

2. We see no need further to embarrass the luckless object of defendant's activities by identifying him in this opinion.

3. Neither of the Assistant United States Attorneys who represented the Government in this appeal was the prosecutor at the trial.

836, 88 S.Ct. 47, 19 L.Ed.2d 98 (1967); United States v. Stromberg, 268 F.2d 256, 271 (2d Cir.), cert. denied, Lesso v. United States, 361 U.S. 863, 80 S.Ct. 119, 4 L.Ed.2d 102 (1959); Az Din v. United States, 232 F.2d 283 (9th Cir.), cert. denied, 352 U.S. 827, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956).

Appellant has raised other objections to the prosecutor's summation upon which we need not rule; we note, however, that the courtroom reeked with the sordid nature of the scheme and the unsavory personal history of the conspirators. Resort to epithets, always undesirable, was hardly necessary for emphasis in this case. See United States v. Guidarelli, 318 F.2d 523 (2d Cir.), cert. denied, 375 U.S. 828, 84 S.Ct. 72, 11 L.Ed.2d 60 (1963); Steele v. United States, 222 F.2d 628, 631 (5th Cir. 1955); United States v. Walker, 190 F.2d 481, 484 (2d Cir.), cert. denied, 342 U.S. 868, 72 S.Ct. 109, 96 L.Ed. 653 (1951), and at 485–488 of 190 F.2d (Frank, J., dissenting); Note, Other Crimes Evidence at Trial: Of Balancing and Other Matters, 70 Yale L.J. 763, 783 n. 117 (1961).

■ Appellant also has a number of complaints about the judge's charge, at least one of which has obvious merit. Towards the end of the charge, the court stated:

> In the final analysis, then, if you find that the evidence respecting the defendant is as consistent with innocence as with guilt, or that it is more likely that the defendant is innocent than guilty, then you should acquit him. If you find that the law has not been violated you should not hesitate for any reason to return a verdict of not guilty, because that is the law.

This instruction erroneously allowed the jury to use the preponderance of evidence standard in a criminal case. The jury is still required to acquit even though it is less likely that the defendant is innocent than guilty, so long as the jury is not convinced of that guilt beyond a reasonable doubt. But the quoted language failed to include this crucial possibility. United States v. Guglielmini, 384 F.2d 602, 606–607 (2d Cir. 1967); see United States v. Di Donato, 301 F.2d 383, 385 (2d Cir.), cert. denied, 370 U.S. 917, 82 S.Ct. 1557, 8 L.Ed.2d 497 (1962). We realize that earlier in the charge the court properly defined at length the burden of proof resting upon the Government and later in the charge frequently referred to the "reasonable doubt" requirement. But the impact of the quoted statement must have been considerable, coming as it did just a few moments before the jury retired and prefaced with, "In the final analysis." While we are not receptive to quibbling attacks on the "reasonable doubt" charge, the Government's burden of persuasion must be made clear. Far from doing that, the quoted language gave an erroneous impression of the standard of proof to be used in a criminal case. The Government properly points out that no objection was made; if this error were alone, therefore, we would have to decide whether there was "plain error" under Fed.R.Crim.P. 52(b). United States v. Pugliese, 346 F.2d 861 (2d Cir. 1965); cf. United States v. Byrd, 352 F.2d 570 (2d Cir. 1965). But combined with the improper and uncorrected summation already discussed, we conclude that a new trial is required. Under these circumstances, we do not consider appellant's other objections to the charge.

We are reluctant to set aside a conviction which was amply supported by the evidence, but we feel compelled to do so. The Government has emphasized the "loathsome actions" which the defendant admitted; we agree that the adjective is justified. Even so, defendant had a right to a trial unmarred by substantial error; we protect that right for him so that it may continue to be available for all.

Judgment of conviction reversed; remanded for a new trial.