UNITED STATES of America, Appellee,

v.

Raymond MARQUEZ and Radames Mas, Appellants.

Nos. 627, 628, Dockets 34218, 34219.

United States Court of Appeals, Second Circuit.

Argued March 13, 1970.

Decided April 7, 1970.

Rehearing Denied May 15, 1970.

Mary M. Kaufman, New York City (Albert J. Krieger, New York City, and Frank Askin, Newark, N. J., on the brief), for appellants.

Richard A. Givens, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for the Southern District of New York, William B. Gray, Asst. U. S. Atty., on the brief), for appellee.

Before SMITH, KAUFMAN and HAYS, Circuit Judges.

**J. JOSEPH SMITH, Circuit Judge.**

Raymond Marquez and Radames Mas appeal from judgments of conviction on trial to the jury in the United States District Court for the Southern District of New York, Walter R. Mansfield, *Judge.* Marquez and Mas were charged with crossing state borders to further unlawful activity under 18 U.S.C. § 1952, and conspiracy to do the same under 18 U.S.C. § 371. Mas was also charged with interstate transportation of gambling paraphernalia under 18 U.S.C. § 1953. Five other defendants under the indictment were severed before trial. Mas was found to be guilty on all three counts. Marquez was found to be guilty of Count Two, conspiracy only. The jury was unable to agree on Marquez' substantive count and a mistrial was declared as to that count. Mas was sentenced to three years' imprisonment and a $5,000 fine on each count, concurrently. Marquez was sentenced to five years' imprisonment and a $10,000 fine. We find no error and affirm the judgments.

The evidence tended to show a complex numbers racket operating out of the Sky Club in New York City. Mas was a New Jersey resident who was found to have kept a control sheet and other gambling materials in his New Jersey home. He was arrested on September 3, 1968 on the New York side of the George Washington Bridge; he was carrying gambling records, an address book, and $12,800 cash. His home was searched the same day yielding a suitcase full of gambling materials, the control sheet, and a letter which became known as the "Firpo letter." Mas had been seen on numerous occasions near the Sky Club, often together with Marquez. Marquez was arrested in his car in New York on May 14, 1969 and a bag on the seat between him and a compatriot, Marcone, was found to contain money and gambling slips resembling in many aspects those seized from Mas' home.

■ Appellants argue that on the conspiracy counts it was error to admit materials seized at Marquez' arrest, since the federal conspiracy arguably had ended eight months previously at the time of Mas' arrest. They argue that the only evidence of any interstate travel was that by Mas, and this ended at his arrest. Thus, they contend the federal conspiracy to travel across state borders to promote gambling must have ended when the interstate travel ended. We do not agree. Even if the conspiracy ended with the cessation of interstate travel, *acts* of conspirators after the conspiracy may be used to show the fact of the illegal association (as opposed to hearsay declarations of a co-conspirator after the end of the conspiracy). United States v. Bennett, 409 F.2d 888 (2d Cir.), cert. denied sub nom. Haywood v. United States, 396 U.S. 852, 90 S.Ct.

113, 24 L.Ed.2d 101 (1969), and Jessup v. United States, 396 U.S. 853, 90 S.Ct. 117, 24 L.Ed.2d 101 (1969); see United States v. Ragland, 375 F.2d 471, 477 (2d Cir. 1967), cert. denied, 390 U.S. 925, 88 S.Ct. 860, 19 L.Ed.2d 987 (1968). Here, the items seized from Marquez at the time of the arrest were not hearsay declarations, were probative as to the existence of the allegedly prior conspiracy, and were thus admissible to show the existence of the conspiracy, even if it had already terminated. In any event, it is not clear that Mas' arrest ended the conspiracy. See *Bennett, supra.* It may also be noted that the substantive crime, section 1952, contemplates interstate travel *followed by* acts in violation of state law.

■■■■ Next, appellants argue that the conspiracy count against them must fall because there is no direct evidence that Marquez knew of any interstate element. There is, however, circumstantial evidence. Marquez' fingerprints were found on the control sheet in Mas' New Jersey home. Mas' phone called Marquez' 18 times. In the case of leaders of a conspiracy, an inference may be drawn in a proper case that the leader is aware of his underling's out-of-state residence. United States v. Corallo, 413 F.2d 1306 (2d Cir. 1969); United States v. Barrow, 363 F.2d 62 (3 Cir. 1966), cert. denied, 385 U.S. 1001, 87 S.Ct. 703, 17 L. Ed.2d 541 (1967). There is sufficient evidence that Marquez was a leader. He was seen near the Sky Club acting like a leader. And his fingerprints were found on a control sheet which it might be inferred would only be in the hands of the higher echelon. Thus the evidence supports the conclusion of Marquez' knowledge of the interstate element.

■■■■ Appellants next challenge the admission of the so-called "Firpo letter" which was seized at Mas' home. They argue it was hearsay by an unidentified co-conspirator, "Firpo" about whom there is no independent evidence as to his membership. And they argue that it

is hearsay because there is no way to cross-examine Firpo as to the contents. [The letter was addressed: "Attention Boss" and dealt with a payoff difficulty which seemed to arise from bets recorded on the control sheet.] However, it is not clear that this is hearsay since the letter was not used to show the truth of its contents, that is, that a payoff difficulty actually existed, but rather only as evidence of the existence of a report to some "Boss" of administrative difficulties which were apparently to be settled within a hierarchical structure. See United States v. Nuccio, 373 F.2d 168 (2d Cir.), cert. denied, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 623 (1967). Moreover, there was no objection on the hearsay ground, only on the ground of lack of connection and foundation. Attack now is therefore precluded. *Bennett, supra,* 409 F.2d at 898. Finally, appellants urge that this letter could not be considered by the jury in considering the question of membership. We have rejected this argument repeatedly. Independent evidence of membership is needed to ground the judge's decision to *admit* hearsay declarations by co-conspirators, but once admitted, the declarations are available on all issues. United States v. Geaney, 417 F.2d 1116 (2d Cir. 1969).

■■■■ Next, appellants contend that the court's answers to jury questions were erroneous. At the end of the first day the jury announced it had found Mas guilty on all three counts and that it was divided as to Marquez. Appellants argue that it is inconsistent to find Mas guilty of conspiracy without being able to decide if Marquez was also guilty of conspiracy. This contention must be rejected since Mas could have been found to have conspired with men other than Marquez, and the evidence was sufficient to support such a finding. Appellants argue that instructions allowing the finding of a conspiracy with other men were error since there was no evidence of any interstate conspiracy with other men. They argue that all the evidence showed an intra-New York con-

spiracy. But Mas' participation, and the evidence thereof, makes the others federal conspirators if they knew of Mas' interstate activity, and the inference is permissible that they did. Appellants also argue that the court's response to the jury's request for clarification of the meaning of conspiracy by rereading the charge on Count Two, was prejudicial since it did not include the stress on the interstate requirements of the underlying substantive count. However, the jury only asked for the meaning of conspiracy, not a rehash of the elements of the substantive crime, and appellants admit the charge was correct as to conspiracy. We cannot presume the jury forgot the elements of the substantive crime.

■ Next appellants argue that it was error to let the jury see the entire indictment upon its request. Appellants sought to blot out the name of Albert Elmo Payne, a/k/a Firpo, since there was no evidence that a Firpo existed (he was named as a co-defendant in the indictment). But the trial judge has discretion on submitting the indictment. Souza v. United States, 304 F.2d 274 (9 Cir. 1962). And it would seem that the information that someone known as "Firpo" existed could not prejudice appellants, since the "Firpo letter" itself proved someone used that pen-name. Although perhaps the judge should have blacked out "Firpo's" name, there is no prejudice shown here.

■ Next, appellants contend it was error for the judge during the marshalling of evidence to characterize the defense's case as contending that the evidence is consistent with innocence. They cite United States v. Hughes, 389 F.2d 535 (2d Cir. 1968) to the effect that such a charge shifts the burden of proof to defendants to show innocence. However, in *Hughes,* the court charged that if it found the evidence to be consistent with innocence it should find for defendants, which might be construed as having reference to a burden on defendants. Here the judge was simply accurately characterizing the defendants' case. The burden of proof was accurately charged in another part of the instructions.

■ Next appellants argue that the interstate element here was not intended to be within the reach of sections 1952 and 1953. They argue that Mas' New Jersey residence was incidental to the gambling conspiracy, and that the slips he carried over the bridge on the day of the arrest were not in aid of the conspiracy. See United States v. Hawthorne, 356 F.2d 740 (4 Cir. 1966), cert. denied, 384 U.S. 908, 86 S.Ct. 1344, 16 L.Ed.2d 360 (1966) (family move from Indiana to West Virginia held incidental to gambling enterprise and hence no crime under federal law). But here we have sufficient federal criminal flavor in the travel. Mas kept gambling records in New Jersey which created a need for multi-state or federal law enforcement. And the travel was to be reasonably expected as part of the enterprise. United States v. Corallo, 413 F.2d 1306 (2d Cir. 1969). This is the kind of organized crime on a wide scale that was within Congressional intent in section 1952.

■ Finally, appellants argue that Mas had to have specific intent to violate the federal law in order to be found guilty of the substantive counts (One and Three). See Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952); Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). The only intent required in the section, however, is to violate state law or the carrying of gambling paraphernalia as defendant crosses the state line. This is not a case where defendants were unaware of possible law violations.

The judgment of conviction is affirmed as to both appellants.

### On Petition for Rehearing

A petition for a rehearing for Raymond Marquez and Radames Mas together with a motion in the alternative to stay the issuance of the mandate and

to continue bail as to Radames Mas pending application for a writ of certiorari to the Supreme Court of the United States having been filed herein by counsel for the appellants,

Upon consideration thereof, it is ordered that said petition for rehearing be and it hereby is denied. The issuance of the mandate is stayed for 30 days pending application for certiorari pursuant to the terms of Rule 41(b), Federal Rules of Appellate Procedure. The petition to continue Radames Mas on bail is denied, and his bail revoked.