**UNITED STATES of America, Appellee,**

v.

**Mohammad Usman KHAN, Appellant.**

**No. 1077, Docket 87–1042.**

United States Court of Appeals, Second Circuit.

Argued April 28, 1987.

Decided June 5, 1987.

Susan C. Wolfe, New York City (Todtman, Hoffman, Epstein, Young, Goldstein, Tunick & Pollok, P.C., Mark A. Summers, of counsel), for appellant.

Emily Berger, Asst. U.S. Atty., E.D.N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Catherine E. Palmer, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Before FEINBERG, Chief Judge, and KEARSE and WINTER, Circuit Judges.

FEINBERG, Chief Judge:

Mohammad Usman Khan appeals from a judgment of the United States District

Court for the Eastern District of New York, Henry Bramwell, J., convicting him of one count of attempted possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Khan was acquitted of one count of conspiracy to possess heroin with intent to distribute and one count of importing heroin. On appeal, Khan claims that his conviction cannot stand because the jury charge on reasonable doubt was improper, venue for the charge of attempted possession was lacking in the Eastern District of New York and a prior consistent statement by a government witness should have been ruled inadmissible.

*Background.* In July 1986, Special Agent James King of the Drug Enforcement Administration (DEA), working undercover as an employee of Pan Am, agreed to deliver six kilograms of heroin from Pakistan to New York for Syed Mohammed Abbas, Khan's co-defendant who pleaded guilty before trial to all three counts of the indictment. Abbas informed King that he had a buyer in New York for the heroin. Abbas testified that Khan was the intended buyer.

After Agent King transported some of the heroin to New York, Abbas advised him that the purchaser wanted to inspect a sample of the heroin before completing a deal. Abbas arranged a meeting at a hotel in Manhattan for King to deliver a sample to the purchaser. When King arrived at the meeting, Khan was there with Abbas. King handed Abbas a backpack containing some of the heroin and Abbas gave King a partial payment of the courier fee. Abbas testified that he had obtained money from Khan to make the payment. Abbas told King that once the buyer checked the quality of the package, arrangements would be made for delivery of the remaining heroin the following day. King left the meeting first. After King departed, Khan left the hotel carrying the backpack and Abbas left a short time later. DEA agents then arrested both Khan and Abbas upon their departures.

■ *Jury Charge.* Khan objects to the following portion of the district court's charge to the jury:

So, if the jury views the evidence in the case as reasonably permitting either of two conclusions, one of innocence, the other of guilt, you, the jury, should, of course, adopt the conclusion of innocence.

Khan contends that this charge was improper because it allowed the jury to convict him based on a preponderance of the evidence. Khan contends that "[p]recisely the same language was condemned" in *United States v. Hughes*, 389 F.2d 535, 537 (2d Cir.1968).

A review of the district court's entire charge in this case, however, shows that the court fairly conveyed to the jury the concept of proof beyond a reasonable doubt. The judge instructed the jury several times on the meaning of reasonable doubt and specifically told the jury to acquit unless it was "satisfied beyond a reasonable doubt of the defendant's guilt." Thus, the court's charge, taken as a whole, properly instructed the jury on reasonable doubt. See *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

Although the charge set forth above is not identical to the charge in *Hughes*, and, in our view, not quite as troublesome, we believe nevertheless that it may confuse a jury. We do not fault the district court unduly for using this charge, though, since this court's references to similar charges have not always been consistent. Not long after our statement in *Hughes*, this court several times approved of the view expressed by the panel in *Hughes*. See *United States v. Baratta*, 397 F.2d 215, 227 (2d Cir.), cert. denied, 393 U.S. 939, 89 S.Ct. 293, 21 L.Ed.2d 276 (1968); *United States v. Palumbo*, 401 F.2d 270, 275 (2d Cir. 1968), cert. denied, 394 U.S. 947, 89 S.Ct. 1281, 22 L.Ed.2d 480 (1969); *United States v. Marcus*, 401 F.2d 563, 567–68 (2d Cir. 1968), cert. denied, 393 U.S. 1023, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969). On the other hand, the year following the *Hughes* decision, a panel of this court without mention-

ing *Hughes* or any of the cases approving *Hughes* stated that a jury would not be misled by language similar to the *Hughes* language, *United States v. Cacchillo*, 416 F.2d 231, 234 (2d Cir.1969), and this observation was cited by another panel of this court a decade later, *United States v. Praetorius*, 622 F.2d 1054, 1061–62 (2d Cir. 1979), cert. denied, 449 U.S. 860, 101 S.Ct. 162, 66 L.Ed.2d 76 (1980). In addition, Devitt & Blackmar have used the language in this case as part of their pattern instruction, 1 Devitt & Blackmar, Federal Jury Practice and Instructions § 11.14, at 311 (3d ed. 1977), but their recent supplement apparently recommends that the language not be used, id., § 11.14 at 158 (1986 Supp.).

■ In our view, trial judges should not include any variation of the "two-inference" language in their charge. See Sand, Siffert, Loughlin & Reiss, Modern Federal Jury Instructions ¶ 4.01, at 4–5 (1986). The "two-inference" language, that if the jury believes the evidence permits either the inference of innocence or of guilt, the jury should adopt the former, is obviously correct as far as it goes. But such an instruction by implication suggests that a preponderance of the evidence standard is relevant, when it is not. Moreover, the instruction does not go far enough. It instructs the jury on how to decide when the evidence of guilt or innocence is evenly balanced, but says nothing on how to decide when the inference of guilt is stronger than the inference of innocence but no strong enough to be beyond a reasonable doubt. In a charge that properly instructs the jury on reasonable doubt, the "two-inference" language "adds nothing." Id., ¶ 4.01, at 4–9. Therefore, we want to make clear now that the "two-inference" language should not be used because, standing alone, such language may mislead a jury into thinking that the government's burden is somehow less than proof beyond a reasonable doubt.[1] In addition, we expect the government, as well as defense counsel, to assume responsibility for bringing these comments to the attention of trial judges.

■ *Venue.* Khan argues that the district court erred in not dismissing for lack of venue in the Eastern District the count of the indictment on which he was convicted. That count clearly charged Khan with the substantive offense of attempting to possess heroin within the Southern District of New York with intent to distribute. Khan did not object to the venue defect until the end of the first day of trial testimony. Since the defect was apparent on the face of the indictment, Khan's failure to object prior to trial constituted a waiver of the lack of venue. See *United States v. Levasseur*, 816 F.2d 37, 44–45 (2d Cir.1987); *United States v. Price*, 447 F.2d 23, 27–28 (2d Cir.), cert. denied, 404 U.S. 912, 92 S.Ct. 232, 30 L.Ed.2d 186 (1971).

■ *Prior Consistent Statement.* At trial, after the defense had put in issue Khan's knowledge and intent concerning the heroin deal with Agent King and Abbas, the government called Shahraiz Hussain Sheikh to testify about Khan's involvement in a prior heroin transaction. Sheikh and three others had been arrested on April 2, 1986 in connection with a plan to import heroin from Pakistan to distribute in New York. On April 29, 1986, Sheikh entered into a cooperation agreement pursuant to which he testified at Khan's trial. On May 1, 1986, Sheikh pleaded guilty to possession of heroin with intent to distribute.

On direct examination, Sheikh testified that he had known Khan since 1982 and that they were close friends. Sheikh testified that he and his cousin met Khan several times in December 1985 and February 1986 in order to negotiate a deal for two kilograms of heroin. According to Sheikh, Khan demanded to see a sample and, after Sheikh and his cousin provided one, they agreed on a purchase price. Sheikh and his accomplices were arrested before any heroin was delivered to Khan.

Defense counsel's extensive cross-examination of Sheikh established that Sheikh did not mention Khan either when he talked to DEA agents on April 2, 1986, the

---

1. This opinion was circulated to all active judges of the Court prior to filing.

day of his arrest, or on May 1, 1986, when he pleaded guilty. This line of questioning was clearly intended to suggest that Sheikh was lying on direct about Khan's involvement in the prior heroin transaction. The government responded by calling Agent Joseph Gallo, who testified that Sheikh had mentioned Khan's connection with the prior heroin deal on April 29, 1986, when Sheikh entered into the cooperation agreement.

Khan argues that the district court erred in admitting Agent Gallo's testimony as a prior consistent statement of Sheikh. See Fed.R.Evid. 801(d)(1)(B). Khan concedes that a prior consistent statement is admissible as substantive evidence to rebut a charge of recent fabrication but contends that Sheikh's prior statement should have been excluded because it was made after the time the motive to fabricate arose. Khan argues that Sheikh's motive to lie in order to obtain a cooperation agreement and reduce his own sentence "arose the moment he was arrested, when his relationship with DEA Agent Gallo began and his initial debriefing took place." We believe under the circumstances, however, that Sheikh was unlikely to enhance his chances for a cooperation agreement by making false accusations to Agent Gallo. Sheikh also had no apparent motive to falsely accuse Khan in particular, especially since he implicated Khan nearly three months prior to Khan's arrest. See *United States v. James,* 609 F.2d 36, 49–50 (2d Cir.1979), cert. denied, 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980). Thus, on balance, we are unpersuaded that Sheikh had a motive to lie about Khan's involvement in Sheikh's heroin deal when he made the prior consistent statement. In addition, Khan's argument proves too much. If Khan were correct that Sheikh's motive for lying "arose the moment he was arrested ... and existed at all times thereafter," then one would have expected Sheikh to implicate Khan from the very beginning and throughout his contacts with government agents. But, as Khan's defense counsel's questioning of Sheikh revealed, Sheikh did not do that. See id. at 49–50; *United States v. Wilkinson,* 754 F.2d 1427,

1433 (2d Cir.) cert. denied, 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985). We hold, therefore, that the district court did not err in admitting Agent Gallo's testimony to rebut the false impression of recent fabrication created by defense counsel's cross-examination of Sheikh.

■ Agent Gallo's testimony on Sheikh's prior consistent statement was also admissible for the purpose of rehabilitation. See *United States v. Pierre,* 781 F.2d 329, 333–34 (2d Cir.1986). Khan argues that it was error to admit Sheikh's prior statement because Sheikh's "cross-examination did not elicit an actual or even implied inconsistent statement" and the only purpose of the prior statement was "to reinforce through repetition." We disagree. The government in this case did not have to point to a specific inconsistent statement by Sheikh. Defense counsel specifically attacked Sheikh's credibility on cross-examination and clearly implied that his failure to mention Khan at various times was inconsistent with his testimony on direct examination. See *United States v. Brennan,* 798 F.2d 581, 589 (2d Cir.1986). Sheikh's prior consistent statement thus was relevant to show whether the omissions were actually inconsistent with his testimony on direct. See *Pierre,* 781 F.2d at 334; *Brennan,* 798 F.2d at 589. "When the prior [consistent] statement tends to cast doubt on whether ... the impeaching statement is really inconsistent with the trial testimony, its use for rehabilitation purposes is within the sound discretion of the trial judge." *Pierre,* 781 F.2d at 333. Thus, Agent Gallo's testimony could properly be admitted for rehabilitation.

■ In any event, even if there had been error in admitting Agent Gallo's testimony, the error was harmless in view of the clear evidence of Khan's guilt. Abbas testified that Khan had agreed on a purchase price for the heroin subject to quality and that Khan had given him money to pay the courier fee. There was also evidence that Khan was at the meeting where a sample of heroin was exchanged for partial payment of the courier fee and was in possession of the sample when he was arrested.

We have considered all of Khan's arguments and find them without merit. The judgment of the district court is affirmed.