**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1886
_____

UNITED STATES OF AMERICA

v.

JULIUS GREER,
a/k/a POONY

Julius Greer,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2:10-cr-00711-001)
District Judge:  Hon. John R. Padova

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 19, 2013

Before: FUENTES, CHAGARES, and BARRY, Circuit Judges.

(Filed: June 12, 2013)
_____

OPINION
_____

CHAGARES, Circuit Judge.

A jury convicted defendant Julius Greer of robbery and three related offenses.

Greer appeals his conviction on two grounds.  First, he argues that the District Court

should have dismissed the indictment because of Speedy Trial Act violations. Second, he argues that the jury charge on reasonable doubt was plainly erroneous and demands reversal. For the reasons that follow, we will affirm Greer's conviction.

I.

The charges against Greer arose from an October 2009 robbery that occurred in the offices of UACT, a property management company located near Drexel University in Philadelphia, Pennsylvania. Two men, Patrick Hancotte and Sean Stock, entered the office under the guise of looking for an apartment to rent. Once inside, they pointed a gun[1] at one of UACT's owners, beat her with a crow bar, bound her hands and feet, and covered her mouth with duct tape. They then stole jewelry and other items from the office. Ebony Long, who is Greer's first cousin and was Stock's fiancée at the time, assisted the two men. All four individuals were ultimately charged in connection with the robbery. All except Greer pled guilty — Long entered into a plea agreement with the Philadelphia District Attorney's Office and Stock and Hancotte entered into plea agreements with the U.S. Attorney's Office. The three testified against Greer at trial and claimed that Greer had orchestrated the robbery.

On October 28, 2010, a grand jury returned a four-count indictment that charged Greer with conspiracy to commit robbery, robbery, and two weapons offenses. On August 12, 2011, Greer moved to dismiss the indictment for violations of the Speedy Trial Act, 18 U.S.C. § 3161, et seq. The District Court denied the motion, concluding

---

[1] At trial, the victim testified that both men had guns.

that only forty-eight days had elapsed on the speedy trial clock. Greer was ultimately tried over five days in October 2011. A jury convicted him on all counts and the District Court sentenced Greer to a total term of 180 months of imprisonment followed by a five-year term of supervised release and ordered him to pay $1,400 in restitution.

Greer appeals, arguing that the District Court erred when it denied his motion to dismiss the indictment and that the jury instruction on reasonable doubt was plainly erroneous. We will address each claim of error in turn.

## II.[2]

We ordinarily review a district court's compliance with the Speedy Trial Act de novo and the factual determinations underlying the court's findings for clear error. United States v. Rivera Constr. Co., 863 F.2d 293, 295 n.3 (3d Cir. 1988). If we conclude that a district court has properly interpreted the Speedy Trial Act, we will review the court's grant or denial of a motion for a continuance for abuse of discretion. United States v. Lattany, 982 F.2d 866, 870 (3d Cir. 1992); see also United States v. Adedoyin, 369 F.3d 337, 341 (3d Cir. 2004). When ruling on a defendant's motion to dismiss an indictment for Speedy Trial Act violations, the district court must identify and tally the days included on the speedy trial clock and count toward the seventy-day limit. Zedner v. United States, 547 U.S. 489, 507 (2006).

---

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over Greer's appeal pursuant to 28 U.S.C. § 1291.

A.

Greer raises four claims of error with respect to the District Court's Speedy Trial Act calculations. Though Greer moved to dismiss the indictment before the District Court, the Government argues that by failing to raise these specific claims of error contemporaneously or in his motion to dismiss, Greer has waived — or at least forfeited — the right to pursue those arguments on appeal.

The Speedy Trial Act requires that a defendant be brought to trial within seventy days of his indictment, information, or arraignment, whichever is later. 18 U.S.C. § 3161(c)(1).[3] After the deadline passes, a defendant may move to dismiss the charges against him and the indictment "shall be dismissed." 18 U.S.C. § 3162(a)(2). A defendant who does not move for dismissal before trial waives his right to appeal on speedy trial grounds. Id. ("Failure of the defendant to move for dismissal prior to trial . . . shall constitute a waiver of the right to dismissal under this section."). As a result, a defendant who does not move to dismiss below has no recourse on appeal. See United States v. Belton, 520 F.3d 80, 82 (1st Cir. 2008) (explaining that when a defendant fails to move for dismissal prior to trial, "even plain error review is unavailable" (quotation marks omitted)). However, the Speedy Trial Act does not specify whether a defendant must raise every potential speedy trial violation argument before the district court in

_____

[3] Congress enacted the Speedy Trial Act to effectuate the Sixth Amendment right to a speedy trial, but the seventy-day limit in the Speedy Trial Act exceeds the protections required by the Sixth Amendment. United States v. Lattany, 982 F.2d 866, 870 & n.5 (3d Cir. 1992). As a result, a defendant can assert a Speedy Trial Act violation without asserting a constitutional violation. See id. Greer does not assert a constitutional violation.

order to preserve the issue for appeal or whether moving for dismissal is enough to preserve all Speedy Trial Act-related arguments. The Government contends that Greer has waived the right to assert all arguments not specifically raised below.

The Government primarily relies on a decision from the Court of Appeals for the Eighth Circuit, United States v. Gamboa, 439 F.3d 796 (8th Cir. 2006). Gamboa involved a provision of the Speedy Trial Act that imposes a thirty-day time limit between arrest and indictment. Id. at 803-04. The Court of Appeals for the Eighth Circuit rejected the defendant's Speedy Trial Act challenge, concluding that Gamboa "waived his right to appeal this particular speedy trial issue by failing to move for dismissal of Count Four on this ground prior to his trial in the district court." Id. at 804. However, the procedural posture that brought Gamboa before the Court of Appeals is unclear. Though the opinion refers generally to "motions to dismiss," id. at 800, it does not specify whether Gamboa moved for dismissal of Count Four, contained in a superseding indictment, on any ground below. Id. at 804.

The Court of Appeals for the First Circuit has also suggested — without deciding — that a "pretrial motion to dismiss . . . [based on] an entirely separate 104-day period" from the period contested on appeal would not preserve all Speedy Trial Act arguments for appeal. United States v. Valdivia, 680 F.3d 33, 41-42 (1st Cir. 2012) (declining to decide the waiver argument because the defendant could not establish plain error); see also United States v. O'Connor, 656 F.3d 630, 638 (7th Cir. 2011) (suggesting that a defendant waives particular Speedy Trial Act arguments by failing to raise them in a motion to dismiss before the district court). Other Courts of Appeals to address the

5

question apply plain error review when a defendant does not raise a specific speedy trial argument before the district court. See, e.g., United States v. Taylor, 497 F.3d 673, 676 (D.C. Cir. 2007) (reviewing for plain error when defendant moved to dismiss below based on a separate provision of the Speedy Trial Act).

We hold that Greer has not waived his right to appeal on the grounds he raises before this Court. Greer moved for dismissal of the entire indictment below and objected to specific orders and excluded time periods that he again points to on appeal. The Speedy Trial Act specifies the conditions for waiver: a failure to move for dismissal of the indictment below. We decline the Government's invitation to read an extra requirement into this plain statutory language: that a defendant must move for dismissal and raise identical arguments before the district court. Instead, we will adhere to the approach that we typically follow when a defendant raises new arguments on appeal: we will review for plain error. See United States v. Vampire Nation, 451 F.3d 189, 203 (3d Cir. 2006) (reviewing for plain error when party raised new theory on appeal).

B.

The Speedy Trial Act excludes some days from the seventy-day limit, including delays that result from pretrial motions and continuances issued by the court. 18 U.S.C. § 3161(h)(1)(D)&(7)(A); United States v. Brenna, 878 F.2d 117, 120 (3d Cir. 1989). Greer contends that Judge Padova wrongfully excluded certain delays from the speedy trial clock and that a total of one hundred and eleven non-excludable days elapsed between Greer's indictment and his motion to dismiss.

1.

6

Greer argues that fifty non-excludable days elapsed between October 28, 2010, the day of his indictment, and December 20, 2010, his initial trial date and the day he contends that the first continuance took effect. On December 13, 2010, Greer filed a motion for a ninety-day continuance, which the Government did not oppose. The court issued an order on December 15, 2010, granting the continuance and setting the trial date for March 21, 2011.

To calculate how many days have elapsed on the speedy trial clock, we will exclude the day that started the clock and the day that an event that stops the clock occurs. See United States v. Willaman, 437 F.3d 354, 359 (3d Cir. 2006) (explaining that, to calculate "includable time" on the speedy trial clock, courts should exclude the day of filing and the day of disposition); United States v. Arbelaez, 7 F.3d 344, 348 (3d Cir. 1993) (applying Fed. R. Crim. P. 45(a)). Both parties agree that, as of December 13, 2010, forty-five non-excludable days had elapsed on the speedy trial clock. However, Greer contends that an additional five days elapsed between December 15, 2010, the date that the District Court granted the continuance motion and December 20, 2010, Greer's initial trial date. The order, Greer contends, restarted the speedy trial clock, which continued until the continuance went into effect on December 20, 2010, and again stopped the clock. We cannot agree. On the contrary, the initial trial date no longer existed after the court's December 15, 2010 order, which provided that "the criminal jury trial . . . presently set for December 20, 2010, shall be continued beyond the time limits established by the Speedy Trial Act, and . . . the delay resulting from this continuance shall be excluded from speedy trial calculations." Appendix ("App.") 38. Because the

7

order was effective immediately, no additional days elapsed on the speedy trial clock between December 15th and December 20th.

2.

Greer next argues twenty-three non-excludable days elapsed between April 4, 2011, the day the District Court ruled on his lawyer's conflict motion, and April 28, 2011, when the Government moved for a continuance. Two motions are relevant to this time period. First, Greer moved for early disclosure of Jencks Act, 18 U.S.C. § 3500, material on February 17, 2011. Second, Greer's lawyer filed a conflict motion on March 15, 2011, just before the March 21, 2011, trial date set by the December 2010 order.

Though the Government complied with the Jencks request on March 15, 2011, neither party notified the District Court. As a result, the court issued an order on March 16, 2011, that stopped the speedy trial clock until resolution of the Jencks motion. After the parties notified the court that the Government had complied with the Jencks request, the court promptly dismissed the Jencks motion as moot on May 9, 2011. Greer contends that only thirty days are properly excludable as a result of the Jencks motion because the Speedy Trial Act only excludes thirty days when a motion is unopposed and no hearing is held. As a result, Greer argues, the speedy trial clock restarted on March 16, 2011.

Greer relies on a provision of the Speedy Trial Act that excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court," 18 U.S.C. § 3161(h)(1)(H), to argue that if a motion does not require a hearing, only thirty days may be excluded from the speedy trial clock. See also United States v. Johnson, 29

8

F.3d 940, 945 (5th Cir. 1994) (relying on same subsection to conclude that only thirty days are excludable when defendant moved to suppress evidence and neither party filed additional materials). Yet another, more specific, provision of the Speedy Trial Act governs pretrial motions and excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). But see United States v. Felton, 811 F.2d 190, 197 (3d Cir. 1987) (observing that some courts have held that when there are multiple pretrial motions, the thirty day requirement does not apply inflexibly, declining to reach the issue, but assuming that a thirty-day limit applies). In light of Felton, we will assume that only thirty days were properly excludable as a result of Greer's Jencks request.

The Government argues that Greer's attorney's conflict motion, filed on March 15, 2011, would have again stopped the clock, presumably pursuant to 18 U.S.C. § 3161(h)(1)(D). We agree. See United States v. Lussier, 71 F.3d 456, 460 (2d Cir. 1995) (characterizing motion to resolve a potential conflict in representation as a "pretrial motion"). However, the clock began to run again after the conflict motion was resolved. The court ordered the appointment of new counsel on April 4, 2011, and appointed the new attorney on April 6, 2011. Twenty-three days elapsed on the speedy trial clock between April 4 and April 28, 2011, when the Government moved for an ends-of-justice continuance, which Greer concedes stopped the clock. See 18 U.S.C. § 3161(h)(1)(D). That motion remained outstanding until May 9, 2011, when Greer filed a motion to suppress a prior statement.

9

As of April 28, 2011, sixty-eight days had elapsed on the speedy trial clock.

3.

Greer also argues that twenty-nine days were wrongfully excluded from the speedy trial clock between May 24, 2011, when the District Court resolved his suppression motion, and June 23, 2011, when the Government filed a motion to preclude introduction of an alibi defense.

On May 25, 2011, the District Court issued an order granting the Government's April 28, 2011, motion for a continuance,[4] concluding — in language that mirrored the Government's proposed order that accompanied its April 28, 2011, motion — that "failure to grant this continuance would result in a miscarriage of justice, and would unreasonably deny the government continuity of counsel and the reasonable time necessary for effective preparation." App. 221. The Government's April 28, 2011, motion for a continuance revolved around the Assistant United States Attorney's conflict with a May 9, 2011 trial date, an issue presumably moot by May 25, 2011.

On April 29, 2011, Greer responded that "the defendant does not oppose the government's Motion and same should be granted," though during a May 2, 2011, hearing Greer's counsel represented that "[Greer] would like to enforce his Speedy Trial Right." App. 148, 151. Greer did not object to the May 25 order before the District Court, either contemporaneously or in his August 2011 motion to dismiss the indictment. Because Greer did not object, we will review for plain error and "may reverse[] if the

---

[4] The May 25, 2011, order referenced Docket Entry 80, the Government's April 28, 2011, motion.

10

error 'seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings.'" United States v. Rivas, 493 F.3d 131, 136 (3d Cir. 2007) (quoting Johnson v. United States, 520 U.S. 461, 470 (1997)); see also United States v. Sussman, 709 F.3d 155, 163 (3d Cir. 2013) (explaining that it is within the Court's discretion to grant relief on plain error review).

An ends-of-justice continuance is the "most open-ended type of exclusion recognized under the Act." Zedner, 547 U.S. at 508. A district court must clearly set forth "'either orally or in writing, its reasons' for finding that the ends of justice are served" by a continuance. Id. at 506 (quoting 18 U.S.C. § 3161(h)(8)(A)[5]). However, the district court does not alone shoulder responsibility for enforcement: the Speedy Trial Act "assigns the role of spotting violations . . . to defendants — for the obvious reason that they have the greatest incentive to perform this task." Id. at 502-03. Though a district court may not "provide an after-the-fact justification for unauthorized delays by granting an ends-of-justice continuance nunc pro tunc," the court may "delay articulating on the record its reasons for granting the continuance" if it has entered the continuance order before seventy days have elapsed on the speedy trial clock. Lattany, 982 F.2d at 877. The requirement that a district court explain its reasons for entering an ends-of-justice continuance "serves two core purposes": "[i]t both ensures the district court considers the relevant factors and provides [the reviewing] court with an adequate record

_____

[5] The 2008 amendments to the Speedy Trial Act moved this provision to subsection (h)(7).

11

to review." United States v. Wasson, 679 F.3d 938, 946 (7th Cir. 2012) (quotation marks omitted).

When a defendant fails to identify an error below, courts of appeals have hesitated to find plain error in a "district court's failure to identify, sua sponte" an alleged Speedy Trial Act violation. Valdivia, 680 F.3d at 42 (declining to find plain error when law on issue was unsettled). Here, Greer's failure to raise the issue deprived the District Court of the opportunity to explain and clarify its reasons for granting the continuance. In light of Greer's silence below — and his agreement to the proposed continuance — we cannot, on the record before us, conclude that the May 25, 2011, order was plain error. See Zedner, 547 U.S. at 499 (explaining that the Speedy Trial Act's statutory scheme "is designed to promote compliance with the Act without needlessly subverting important criminal prosecutions"). The May 25, 2011, order properly excluded the days that elapsed until the Government filed its next motion on June 23, 2011.

### 4.

Finally, Greer contends that nine non-excludable days elapsed between July 18th and July 28th. Greer objected to the disputed June 27th order below, but on different grounds.[6] As a result, we will review for plain error.

Again, two motions are relevant. First, the Government filed a motion on June 23, 2011, to preclude introduction of Greer's alibi defense. That motion stopped the speedy trial clock. 18 U.S.C. § 3161(h)(1)(D). At a status conference on June 23, 2011,

---

[6] Before the District Court, Greer contended that the Government already had sufficient time to interview a potential alibi witness.

12

the Government suggested that another ends-of-justice continuance might be appropriate. App. 268 ("I don't want a delay of this trial, but it may be appropriate. . . in the interest of justice, for all parties concerned . . . ."). During that status conference, the parties and the District Court also set August 8, 2011, as the new trial date. On June 27, 2011, the court entered another continuance: "it is hereby ordered that trial in this matter is continued and that the period from the date of this order <u>to the next trial date</u> shall be excluded from all computations of time under the Speedy Trial Act." App. 288 (emphasis added). After defense counsel notified the District Court and the Government that Greer had decided against calling alibi witnesses, the court issued an order on July 18, 2011, that resolved the June 23rd motion. Greer argues that the District Court's June 27th order could not properly exclude all time until his August 8, 2011 trial date because the June 27th order responded only to the proposed alibi defense, which was resolved on July 18th.[7]

During the June 23, 2011, status conference, the parties discussed a possible delay for the Government to explore Greer's proposed alibi defense and the District Court explained that it had no availability to schedule a new trial until August. The District Court set a new trial date of August 8, 2011, before resolution of the alibi motion. Nothing in the Speedy Trial Act requires, as Greer suggests, that the parties immediately

---

[7]  Greer also observes that on June 24, 2011, the District Court entered another order in which it was "ordered that excludable time in the above-captioned case be computed and entered in the record from the date of filing of the Government's Motion to Preclude the Defendant's Introduction of an Alibi Defense . . . until such time that a hearing on said motion is concluded or other prompt disposition is made." App. 287. This order excluded a delay resulting from a pretrial motion pursuant to 18 U.S.C. § 3161(h)(1)(D). A separate provision of the Speedy Trial Act, 18 U.S.C. § 3161(h)(7), governs ends-of-justice continuances, which provided the basis for the June 27, 2011, order.

13

proceed to trial if the original basis for the continuance is resolved prior to the new trial date or that the court issue a new continuance. Instead, the Act allows exclusion of

> [a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A) (emphasis added). This subsection does not provide a "fixed limit to the amount of time that may be excluded under the ends of justice provision" and instead excludes "'any period of limitation resulting from a continuance.'" United States v. Vasser, 916 F.2d 624, 627 (11th Cir. 1990) (quoting 18 U.S.C. § 3161(h)(7)(A). Here, the District Court excluded a reasonable amount of time for the parties to litigate the alibi defense. The order that granted the continuance remained in effect even after the specific issue that triggered the motion was resolved. The exclusion of the days between the June 27, 2011, order and the filing of the next pretrial motion was not plain error.

* * * *

No non-excludable days elapsed after April 28, 2011. In total, sixty-eight non-excludable days elapsed on the speedy trial clock between Greer's indictment and trial. We therefore hold that the Speedy Trial Act was not violated and we decline to reverse Greer's conviction on this basis.

III.

We now turn to Greer's second claim, that the District Court's reasonable doubt instruction was plain error. Greer concedes that he did not object to the jury charge

14

below. We may exercise our discretion to grant relief for plain error if we conclude "that (1) there was error; (2) the error was clear or obvious; (3) the error affected the defendant's substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of the legal proceeding." United States v. Tyson, 653 F.3d 192, 211 (3d Cir. 2011).

When instructing the jury, the District Court first explained that Greer was presumed innocent and that "[t]he presumption of innocence requires that you find the defendant not guilty unless you're satisfied . . . that the Government has proved guilt beyond a reasonable doubt." App. 1180-81. The court then specified that "[t]he presumption of innocence means that the defendant has no burden or obligation to present any evidence at all, or to prove that he is not guilty." App. 1181. Instead, "[t]he burden or obligation of proof is on the Government to prove that a defendant is guilty, and this burden stays with the Government throughout the trial. In order for you to find the defendant guilty of the offenses charged, the Government must convince you that the defendant is guilty beyond a reasonable doubt." App. 1181. The court then instructed the jury on reasonable doubt:

> Proof beyond a reasonable doubt does not mean proof beyond all possible doubt, or to a mathematical certainty. It's not what it means. A reasonable doubt is simply a fair doubt based on reason and logic and common sense or experience. It is a doubt that an ordinary reasonable person has, after carefully weighing all the evidence, and it is a doubt of the sort that would cause him or her to hesitate to act in matters of importance in his or her own life. That's what a reasonable doubt is.

> Note, not beyond all possible doubt, not to a mathematical certainty, no, okay?

15

Now, how can a reasonable doubt come into existence? Well, it may arise from the evidence, or from the lack of evidence, or from the nature of the evidence. All of those things could give rise to reasonable doubt.

Now, ladies and gentlemen of the jury, if after careful and impartial consideration of all the evidence in this case, you have a reasonable doubt that this defendant is guilty of the charge, then you must find the defendant not guilty of that charge.

Also, if you view the evidence on a charge as permitting either a finding of guilty, or a finding of not guilty either way, equipoise, you should adopt the conclusion of not guilty as the verdict on that charge, because if it could go either way, then the Government hasn't proved it beyond a reasonable doubt.

App. 1182-83 (emphasis added).

A trial court must explain the Government's burden to the jury, but "no particular set of words is mandated." United States v. Isaac, 134 F.3d 199, 202 (3d Cir. 1998); see also Thomas v . Horn, 570 F.3d 105, 117 (3d Cir. 2009) ("[S]o long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." (quotation marks omitted)). However, a "two-inference" jury charge suggests that the Government's burden is less than proof beyond a reasonable doubt by instructing that, when "the evidence reasonably permit[s] a finding of both innocence and guilt, the jury should adopt the conclusion of innocence." United States v. Inserra, 34 F.3d 83, 91 (2d Cir. 1994). Though this type of charge is not technically incorrect, it "by implication suggests that a preponderance of the evidence standard is relevant, when it is not." United States v. Khan, 821 F.2d 90, 93 (2d Cir. 1987). This Court has expressed disapproval of the two-inference instruction but has not

16

found it "so constitutionally deficient per se that is infect[s] the entire instruction on reasonable doubt." Isaac, 134 F.3d at 203; see also United States v. Jacobs, 44 F.3d 1219, 1226 (3d Cir. 1995) (holding that the two-inference instruction, standing alone, could not constitute plain error and observing that, to the extent the disputed language carried an unfavorable inference, "we do not think the implication is a strong one" that would render the instructions as a whole unconstitutional). Though we have not held that the two-inference instruction deprives a defendant of his due process rights, we have also concluded that it "should no longer be given without modification." Jacobs, 44 F.3d at 1226.

In Isaac, the defendant objected to an instruction similar to the one in this case. There, the disputed instruction noted that "if the jury views the evidence in the case as reasonably permitting either of two conclusions, one of innocence, the other of guilt, the jury should, of course, adopt the conclusion of innocence." Isaac, 134 F.3d at 202. The district court in Isaac also included language similar to the indisputably correct portion in this case: "[a] reasonable doubt is . . . the kind of doubt that would make a reasonable person hesitate to act." Id. However, the Isaac charge provided additional explanation: that "[p]roof beyond a reasonable doubt must, therefore, be proof of such a convincing character that you would be willing to rely and act upon it, unhesitatingly, in the most important of your own affairs." Id. Greer asks us to conclude that the addition of this second sentence to explain proof beyond a reasonable doubt cured Issac's defective two-inference language and that the absence of such language demands reversal in this case. Both parties observe that the jury charge in Greer's case tracked the Third Circuit's

17

model reasonable doubt instruction except for the final paragraph that referred to "equipoise." However, Greer argues that adherence to the model jury charge is insufficient in the face of the additional, erroneous language. In those circumstances, Greer argues, the model language "cannot alone remediate the erroneous two-inference charge" and further, correct explanation is required. Greer Br. 58 n.17.

The holding in Isaac, however, did not rest on the inclusion of the additional sentence. In fact, the defendant in Isaac objected to the language that Greer now characterizes as unconstitutionally absent. See id. at 203 ("Finally, Isaac objects to the court's explanation that proof beyond a reasonable doubt is 'proof of such a convincing character that you would be willing to rely and act upon it, unhesitatingly, in the most important of your affairs.'"). Here, when instructing the jury on reasonable doubt, the District Court properly "contrasted reasonable doubt with 'all possible doubt'" and emphasized it did not require proof to an absolute certainty. See id. ("[T]he court contrasted reasonable doubt with 'all possible doubt' and 'imaginary doubt,' and explained that, while it was not 'absolute certainty,' neither was it 'mere conjecture or speculation.' The court also stated the reasonable doubt was 'a fair doubt' of the sort that would make a person hesitate to act. We are satisfied that the court made appropriate use of the negative examples.").

The instruction in this case, though disfavored, satisfied the standards set forth in Isaac and was not plainly erroneous. We will not reverse Greer's conviction on this basis.

## IV.

For the reasons discussed above, we will affirm Greer's judgment of conviction.