

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-28-2003

# USA v. Zemba

Precedential or Non-Precedential: Non-Precedential

Docket 01-3969

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Zemba" (2003). *2003 Decisions.* Paper 784.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/784

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-3969

UNITED STATES OF AMERICA

v.

JOSEPH DAVID ZEMBA,

Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Action No. 01-cr-00075)
District Judge: Honorable Alan N. Bloch

Submitted Under Third Circuit LAR 34.1(a)
November 20, 2002

Before: BARRY and AMBRO, Circuit Judges
ACKERMAN*, District Judge

(Opinion filed: February 28, 2003)

OPINION

*Honorable Harold A. Ackerman, United States District Judge for the District of
New Jersey, sitting by designation.

AMBRO, Circuit Judge

Appellant Joseph David Zemba appeals his conviction on one count of possession of a firearm by a convicted felon, a violation of 18 U.S.C. § 922(g)(1).  We affirm.

A.      Facts and Procedural History

On October 22, 1997, gunshots were fired at District Justice Mark J. Bilik's unoccupied office in Westmoreland County, Pennsylvania.  In August 1998, while in police custody, John Waldron began to inform on several individuals.  In February 1999, Waldron informed Pennsylvania police that Zemba and Zemba's then-girlfriend, Mary Jane Beaken, had told him that they were involved in the shooting at District Justice Bilik's office.  Until Waldron told the police of Zemba's involvement, the shooting had been unsolved and there was no evidence connecting the crime to Zemba.  In March 1999, Beaken admitted to her involvement in the shooting and provided the serial number for her weapon, which allowed police to identify that weapon as the firearm used in the shooting at District Justice Bilik's office.  At a pre-trial hearing, Beaken admitted that she had been told by the prosecution that she would not be prosecuted for her role in the shooting incident.

At Zemba's trial, Zemba and Thomas Miller, the other occupant of the car, denied that the shooting took place.  Beaken testified that she was driving her own car with Zemba next to her in the front seat and Miller in the back.  She testified that, as the car neared the intersection of Route 982 and Latrobe Derry Road, Zemba pulled Beaken's Colt .22 semi-automatic pistol from the waistband of his pants and placed it on his lap. As she drove through the intersection, Beaken testified that she saw Zemba point the

pistol out of the passenger window of the car and fire six to eight shots into District

Justice Bilik's office.

        1.     ARD

At the time that she testified at Zemba's trial, Beaken was a participant in

Pennsylvania's Accelerated Rehabilitative Disposition ("ARD") program.[1]  The pending

charge against her was for hindering apprehension of a suspect.  Zemba was prohibited

from questioning Beaken about her ARD status.  This prohibition stemmed from some

confusion surrounding the ARD issue.  Defense counsel initially sought to introduce

Beaken's ARD status as a prior conviction under Rule 609 of the Federal Rules of

Evidence.  The District Court properly refused to allow its introduction on the ground that

ARD was not a conviction.  There followed a conversation between Judge Bloch, the

prosecutor and the defense counsel, during which colloquy the prosecutor stated that "I

believe [Ms. Beaken's ARD] has lapsed and she is no longer under that."  In fact, Beaken

still was under ARD.  Under the order granting ARD, Beaken had been sentenced to nine

months probation, which period was extended by twelve months (until June 2002)

following a technical violation of the terms of her probation.  In his reply brief, Zemba

---

[1]ARD is a pretrial diversionary program that suspends formal criminal proceedings before a conviction on the condition that the defendant will do some act or fulfill some requirements.  See Pa.R.Crim.P. 300 et seq.  If a defendant successfully completes the program, the charges are dismissed upon an order of court.  Pa.R.Crim.P. 319.  Should the defendant fail to complete the ARD program, he or she waives the appropriate statute of limitations and right to speedy trial and may be prosecuted as initially charged. Pa.R.Crim.P. 301, 312.

stated that "[a]t this point of [sic] the cross- examination, the defense argument appears to have been undermined by the government's erroneous representation that the ARD period had lapsed. Thus, cross-examination for bias stemming from the witness' existing probation was foreclosed by the government's misrepresentation as to the status of the ARD probation."

The following day, after Beaken had completed her testimony, and defense counsel had realized that Beaken was still in fact under ARD, defense counsel moved to be permitted to inform the jury of this fact. He stated, "[a]lthough Your Honor ruled it's not a conviction under 609, the fact of being on probation provides bias for a person to cooperate with the Government in the fear of fabrication or being adversely treated while on probation."[2]   The Court replied, "[t]here's no evidence that she's been promised anything by the Government, and you may not tell the jury that."

### 2.    Continuance

Part of the defense theory was that Beaken had corroborated Waldron's description of the crime because Beaken and Waldron were sexually involved. Both Beaken and Waldron were cross-examined on this issue, and both denied that they had been involved in a sexual relationship. The defense claimed that Officer Zdobinski was prepared to

---

[2] During the trial, Zemba described Beaken as being on probation, though she was on ARD. The description is not inapplicable. As the ARD statute itself states, "[t]he conditions of the program may be such as may be imposed with respect to probation after the conviction of a crime, including restitution, except that a fine may not be imposed." Pa.R.Crim.P. 316(A).

testify that Waldron told him that he had been in a sexual relationship with Beaken. Zdobinski could not be found on the day the defense sought to call him to testify. The District Court denied the defense's request for a continuance because Zdobinski's proffered testimony was inadmissible under Fed. R. Evid. 613(b) and 403(b).

### 3. Jury Instructions and Sentencing

Zemba requested that the jury be given government informant and accomplice instructions. The District Court refused to give these instructions and instead gave a generalized witness credibility instruction. While the statutory maximum for the offense with which Zemba was charged is ten years, because the District Court found that he had three previous convictions for violent felonies or serious drug crimes, his sentence was increased to 293 months, or 24 years and 5 months. Zemba argued in a pre-sentence motion that the increase of his sentence beyond the statutory maximum violated Apprendi v. New Jersey, 530 U.S. 466 (2000).

### B. Discussion

Zemba makes five arguments on appeal: (1) he was denied his Sixth Amendment right to confront witnesses when the District Court foreclosed inquiry into or disclosure of the pending ARD charge against Beaken; (2) the District Court violated his Sixth Amendment right to compulsory attendance of witnesses by refusing him a continuance to secure the attendance of a witness who could have exposed bias and motive on the part of Beaken and Waldron; (3) he was denied due process by the District Court's refusal to give anything more than a generalized credibility instruction to the jury; (4) imposing a

5

sentence that exceeded the statutory maximum term of imprisonment for the violation charged in the indictment violated his Fifth Amendment right to due process and his Sixth Amendment right to a trial by jury; and (5) the statute under which he was convicted, 28 U.S.C. § 922(g)(1), is an unconstitutional exercise of Congress's authority under the Commerce Clause.

1.      Violation of Confrontation Clause

Zemba claims that his Sixth Amendment Confrontation Clause right was violated when the District Court did not allow him to impeach Beaken's credibility with her ARD status. Under the Confrontation Clause, a defendant has a right to "engag[e] in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986). Zemba asserts that because Beaken's ARD was still pending, she had a reason to cooperate with the Government to ensure that the charge was dismissed and that this incentive to cooperate is a form of bias that should have been put before the jury. Her ARD status gave her an incentive to cooperate for the following reason: Beaken's cooperation would ensure that she was not charged in connection with the shooting incident. Because her time under ARD had already been extended for a technical violation, were she to be charged for her involvement in the shooting incident (it was, after all, her gun), she could be tried on the charge underlying the ARD. We find that while the District Court may have erred by not allowing Beaken's credibility to be impeached with her ARD status, any error was harmless.

6

A.      Right to Cross-Examination

Cross-examination directed to revealing a witness's possible biases, prejudices, and ulterior motives is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony." Davis v. Alaska, 415 U.S. 308, 316 (1974).  In Davis, the trial court granted the prosecution a protective order to prevent the defense from cross-examining a witness about the witness's probation by order of a juvenile court.  Id. at 310-11.  In opposing the protective order, defense counsel in Davis made it clear that he sought to introduce the witness's probationary status in order to argue that "[he] acted out of fear or concern of possible jeopardy to his probation . . . [and] might have been subject to undue pressure from the police and made his identifications [of the suspect] under fear of possible probation revocation . . . [and that the witness's] record would be revealed only as necessary to probe [him] for bias and prejudice and not generally to call [his] good character into question."  Id. at 311. Although the Supreme Court acknowledged "the state's policy interest in protecting the confidentiality of a juvenile offender's record," the Court overturned Davis's conviction and remanded for a new trial, finding that this interest was "outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness."  Id. at 319-20.

Beaken was one of only two witnesses connecting Zemba to the crime and as such she was a "crucial identification witness."  The purpose of affording a right to cross-examine on bias is to provide a way in which the defense can "afford the jury a basis to

7

infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony." Id. at 316. As stated by the Supreme Court, "[w]e cannot speculate as to whether the jury would have accepted this line of reasoning [that the witness was biased because of his probationary status] had counsel been permitted to fully present it. But we do conclude that the jurors were entitled to have the benefit of the defense theory before them." Id. at 317; see also U.S. v. Landerman, 109 F.3d 1053, 1062 (5th Cir. 1997) ("[T]he jury, as finder of fact, should have been allowed to draw its own inferences regarding [the witness's] credibility and determine what effect, if any, the pending criminal charge had on [his] motivation to testify."). Here, Zemba's jury was entitled to have the fact of Beaken's ARD status before them, and to have the opportunity to draw their own conclusions regarding her credibility.

The Government argues that because Zemba did not request an opportunity to cross-examine Beaken, but rather requested that the jury be told of Beaken's ARD status, the reasoning of Davis does not apply. While it is true that in Davis the Court focused on the right to cross-examination, the reason for allowing that cross-examination was the Court's conclusion that "the jurors were entitled to have the benefit of the defense theory before them." Davis, 415 U.S. at 317. Here we do not have a situation where the defense did not attempt to cross-examine the witness and later tried to have the evidence put before the jury. Rather, in our case the defense's attempt to cross-examine the witness was foreclosed by a misrepresentation (apparently inadvertent) by the Government.

8

When the defense learned the truth, counsel attempted to rectify the mistake by having the evidence put before the jury. In these circumstances, we think that the reasoning of the Court in <u>Davis</u> appears to apply and that the jury was therefore entitled to have the benefit of the defense theory before them.

The District Court concluded that Zemba could not tell the jury about Beaken's pending ARD because "there's no evidence that she's been promised anything by the Government." The fact that Zemba lacked evidence of explicit government promises of leniency does not mean that he should have been denied the right to introduce evidence relevant to Beaken's potential bias. <u>See, e.g.</u>, <u>U.S. v. Anderson</u>, 881 F.2d 1128, 1138 (D.C. Cir. 1989) (concluding that "[t]he permissible scope of exploration on cross-examination is not curtailed by the absence of promises for leniency, for the defense may attempt to show government conduct which might have led a witness to believe that his prospects for lenient treatment by the government depended on the degree of his cooperation"); <u>Landerman</u>, 109 F.3d at 1063 (noting that the "right of cross-examination is so important that the defendant is allowed to 'search' for a deal between the government and the witness, even if there is no hard evidence that such a deal exists. What tells, of course, is not the actual existence of a deal but the witness' subjective belief or disbelief that a deal exists.") (internal citations omitted); <u>U.S. v. Alexius</u>, 76 F.3d 642, 646 (5th Cir. 1996) (finding 6th Amendment violation where the district court refused to allow defendant to cross-examine witness on subject of pending federal and state drug charges, even though witness testified, outside of presence of jury, that he had

9

received no promise of leniency from the government and no specific hope for leniency).[3]

We do not agree with the Fifth Circuit that no cross-examination need be permitted if a pending charge is a misdemeanor. Landerman, 109 F.3d at 1063 n.15 (distinguishing case disallowing cross-examination on ground that pending charge in prior case was misdemeanor); see also Alexius, 76 F.3d at 646 ("Because the penalties for felonies are greater than those for misdemeanors, a witness is more likely to attempt to curry favor with prosecutors if he is facing felony charges than if he is facing misdemeanor charges."). At the core of this distinction between felonies and misdemeanors is the severity of punishment faced by the witness. Here Beaken's misdemeanor exposed her to a potential two-year imprisonment. While this punishment does not approach the severity of the potential life sentence faced by the witness in Landerman, 109 F.3d at 1063, there is no requirement that pending charges be for severe crimes with life sentences. Indeed, in Davis, the witness was on probation for a crime he committed as a juvenile. 415 U.S. at 311. Thus, to our view, Beaken was exposed to punishment sufficiently severe to suggest that her testimony might be biased in the Government's favor.

### B. Harmlessness

---

[3]In U.S. v. Casoni, 950 F.2d 893, 918-19 (3d Cir. 1992), we concluded that the District Court's decision to restrict cross-examination into the pending investigation of a witness's alleged drug use did not result in an unfair trial. Unlike Beaken, the witness in Casoni was cross-examined concerning his prior relationship with federal and state prosecutors, and at the time of the trial, the witness was merely subject to an investigation, and was not on probation or subject to a pending criminal charge, as was Beaken. Id. at 918-19.

10

While the District Court may have erred in concluding that the jury could not be informed of Beaken's pending ARD, that error was harmless. The Constitution entitles a criminal defendant to a fair trial, not a perfect one. Van Arsdall, 475 U.S. at 680. In Van Arsdall, the Supreme Court held that even where a defendant's Sixth Amendment Confrontation Clause right is violated by an improper restriction of the cross-examination of a witness for bias, a court must consider whether that error was harmless in the context of the trial as a whole. Id. at 674. Violations of this right do not fit within the limited category of constitutional errors that are deemed prejudicial in every case. Id. at 681.

The correct standard for the harmlessness inquiry is "whether, assuming that the damaging potential of the cross-examination [was] fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." Id. at 684. Factors to be considered include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case." Id. In this case, two witnesses directly connected Zemba to the crime--Beaken and Waldron. Waldron testified that on two occasions he heard Zemba mention his involvement in the shooting. On one of those occasions, he testified, Beaken was in their presence and confirmed Zemba's involvement to Waldron at Zemba's request. As already noted, Beaken testified that on October 22, 1997, Zemba removed her .22 caliber Colt from his waistband and fired shots at District Justice Bilik's office.

11

Several factors weigh in favor of the conclusion that the District Court's error was not harmless. There is no question that Beaken's testimony was very important to the prosecution's case. Beaken's testimony cannot be said to have been cumulative, as she was the only eyewitness to testify that Zemba fired her gun into the offices of District Justice Bilik. Finally, Miller, the other occupant of Beaken's car on that day, denied that the incident ever took place.

We are persuaded by the other factors, which weigh more heavily in favor of the conclusion that the District Court's error was harmless. Beaken's testimony was corroborated in part by Waldron's testimony, particularly her account of the time when, in her presence, Zemba allegedly told Waldron that he had fired the shots.[4] The cross-examination of Beaken was extensive, and the District Court did allow Zemba to broach with Beaken the subject of the charge for hindering apprehension of a suspect that led to her ARD status, albeit not extensively and without allowing him to bring out her probationary status itself.[5] Finally, and most importantly, Zemba was able to introduce

_____

[4]It should also be noted that one of the defense's theories, the subject of the second issue presented in this appeal, is that this corroboration of Waldron's testimony by Beaken occurred because Waldron and Beaken had been involved in a sexual relationship, a relationship which both Beaken and Waldron denied at the trial, and upon which defense counsel was ultimately prevented from presenting evidence.

[5]The District Court told Zemba that "you can ask her if she lied on a particular instant." Beaken was cross-examined about the facts underlying the charge for hindering apprehension of a suspect as follows:

> Q: Now, on January 6 of 2000 some police officers came to your door and were looking for a Mr. Curtz, do you remember that?

the fact that at a pretrial hearing Beaken had admitted that she was told by the prosecution that she would not be prosecuted for her role in the shooting incident.   On this basis, defense counsel was able to argue to the jury that "[Beaken] is getting something for not rocking the boat, not changing the story that's been given to the police.  It is the safest thing for her to do–or else Waldron asked her."

This last fact convinces us that the error was harmless.  The jury was given an opportunity to consider Beaken's testimony in light of the defense theory that she had made a deal with the Government not to be prosecuted in exchange for her testimony. Assuming that the fact of Beaken's ARD status had been admitted, the conclusion that reasonable jurors could have reached was that Beaken distorted her testimony in favor of the prosecution--precisely the same conclusion that they could have reached on the basis of the evidence actually presented to them that she was not charged for her role in the shooting incident.

We conclude, therefore, that while the District Court may have violated Zemba's Sixth Amendment right by not allowing the fact of the ARD to be presented to the jury,

---

A: Yes.
Q: And you told him he wasn't there, didn't you?
A: Yes.
Q: In fact, he was there, wasn't he?
A: No.
Q: Where was he?
Court: That is irrelevant, where he was.
Q: You say he wasn't in your house at all?
Court: She already answered that; he was not there.

that error was harmless.

### 2. Violation of Right to Compulsory Process

Zemba also argues that his Sixth Amendment right was violated when the District Court refused to grant a continuance to allow him to locate a missing witness who, he alleged, would testify that Waldron had admitted to having a sexual encounter with Beaken in February of 1999. This, he argues, constitutes a violation of his Sixth Amendment right to compulsory process to obtain witnesses in his favor. The Compulsory Process clause "protects the presentation of the defendant's case from unwarranted interference by the government, be it in the form of an unnecessary evidentiary rule, a prosecutor's misconduct, or an arbitrary ruling from the trial judge." Government of Virgin Islands v. Mills, 956 F.2d 443, 445 (3d Cir. 1992).[6]

We reject Zemba's argument because the ruling of the District Court was not arbitrary. In order for Zemba to establish that his right to compulsory process was violated, he must show: "[f]irst, that he was deprived of the opportunity to present evidence in his favor; second, that the excluded testimony would have been material and favorable to his defense; and third, that the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose." Mills, 956 F.2d at 446. Even

---

[6] Zemba also argues that the District Court's ruling denied him due process of law. We have previously noted that some courts analyze the issue discussed above under the Due Process Clause rather than the Compulsory Process Clause, and concluded that there is little, if any, difference in the way the issue is analyzed under the two clauses. Id. at 445 n.4. We shall, therefore, analyze Zemba's claim under the Compulsory Process Clause.

assuming that Zemba was denied the right to present evidence in his favor and that the excluded testimony would have been material and favorable to his defense, the District Court's decision was not "arbitrary or disproportionate to any legitimate evidentiary or procedural purpose." Id.

The Court refused to postpone Zemba's trial because it concluded that the proffered evidence of Officer Zdobinski--testimony contradicting Waldron's prior statement denying the sexual relationship--was inadmissible. Zemba had not, as required by Fed. R. Evid. 613(b), cross-examined Waldron about his statement to Zdobinski. See United States v. DiNapoli, 557 F.2d 962, 965 (2d Cir. 1977). Further, to the extent the evidence was admissible to show bias, it was, the District Court held, irrelevant under Fed. R. Evid. 403(b). Because the District Court's decision to deny the continuance was based on an evidentiary ruling that was not arbitrary, Zemba's Sixth Amendment compulsory process right was not violated.

### 3. Due Process Violation

Zemba contends that the District Court violated his right to due process by giving a generalized witness credibility instruction rather than specific instructions about weighing the testimony of informants and accomplices with particular caution. Compare App. at 364-65, 367 (generalized witness credibility instruction given by District Court) with App. 82-86 (witness credibility and informant instructions requested by defense). We have held that in cases where witnesses "ha[ve] been given reward[s] for cooperation," a district court must either give an accomplice or immunized witness instruction or else

15

"allow[] defense counsel broad latitude to probe the credibility of accomplices and immunized witnesses, and instruct[] the jury to consider whether the witnesses' self-serving motives in testifying have destroyed or diminished their credibility." United States v. Isaac, 134 F.3d 199, 204, 205 (3d Cir. 1998). We refused to create a per se rule requiring a specific instruction in these cases because of the "wide discretion" given to the district court when charging the jury. Id. (citing United States v. Smith, 789 F.2d 196, 204 (3d Cir. 1986)).

We conclude that the District Court acted within the bounds of its discretion in deciding that the generalized credibility instructions were sufficient when charging the jury. As in Isaac, defense counsel was permitted to conduct a vigorous defense and to bring to the attention of the jury factors that suggested Beaken and Waldron's motivations to lie. 134 F.3d at 205. In addition, the District Court instructed the jury that they were to be the judges of the witnesses' credibility and should consider the motives, circumstances, and relationships of each witness. Id.

### 4. Apprendi Violation

We reject Zemba's contentions that his sentence violates Apprendi v. New Jersey, 530 U.S. 466 (2000). His conviction was enhanced beyond the statutory maximum as a result of prior convictions, which, as the Supreme Court held in Almendarez-Torres v. United States, 523 U.S. 224 (1998), and reaffirmed in Apprendi, need not be alleged in the indictment or established as an element of the offense.

### 5. Commerce Clause Violation

Similarly, we reject Zemba's argument that 18 U.S.C. § 922(g)(1) is an unconstitutional exercise of Congress's Commerce Clause power. He contends that § 922(g)(1) is unconstitutional because the conduct it proscribes, the purely intrastate possession of a firearm by a felon, does not have a substantial effect upon interstate commerce. Zemba acknowledges that this challenge is foreclosed by our decision in United States v. Singletary, 268 F.3d 196 (3d Cir. 2001), and raises it before us only to preserve the claim for possible further appellate review.

*  *  *  *  *

We affirm the rulings of the District Court.

_____

By the Court,


 /s/ Thomas L. Ambro
Circuit Judge